UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

                                          Criminal No. 05-90038

v.

                                          Hon. John Corbett O'Meara

ANDRE VAN,

    Defendant/Petitioner.
_____/

**OPINION AND ORDER DENYING**
**PETITIONER'S HABEAS PETITION**

Before the court is Andre Van's motion to vacate sentence pursuant to 28 U.S.C. § 2255. The issues before the court are: (1) whether the district court failed to consider a downward departure or variance from the United States Sentencing Guidelines; (2) whether Van's appellate counsel rendered constitutionally ineffective assistance by failing to obtain dispatch records related to an October 18, 2005 traffic stop; (3) whether the government failed to turn over the dispatch records; (4) whether Van's trial counsel rendered constitutionally ineffective assistance by failing to obtain the dispatch records; and (5) whether government prosecutors engaged in misconduct by failing to turn over the dispatch records.

## BACKGROUND FACTS

Andre Van was charged with drug distribution, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a convicted felon. After a jury trial, Van was found guilty of all charges on December 21, 2006. On February 20, 2008, the court sentenced Van to 360 months imprisonment. Van appealed his conviction and sentence and both were affirmed by the Court of Appeals for the Sixth Circuit on June 29, 2011. The Supreme Court denied Van's writ of certiorari on January 17, 2012. Van then filed a timely motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on September 24, 2012.

In October 2005, the Bureau of Alcohol, Firearms and Tobacco (ATF) began a narcotics trafficking investigation of Andre Van and property located at 5103 Lillibridge in Detroit, MI. R. 37: Trial Tr. 1B at 25, 77. The first interaction with Van and the ATF was on October 13, 2005. On this date, Special Agent Michael Yott was introduced to Van by a confidential informant to purchase drugs. Id. at 63. During this first meeting, Van gave Agent Yott his telephone number. Agent Yott then called Van later that day to set up a drug purchase. Id. at 26, 63. Agent Yott was wearing a recording device during the encounter with Van. Id. at 31-32. When Agent Yott arrived at 5103 Lillibridge to complete the transaction, there was a .38 caliber, snub-nosed revolver along with packets of crack cocaine and heroin on the coffee table. The revolver was blue steel with a brown wood or plastic handle. Id. at 31-34. Agent Yott also spotted a shotgun in the room. Agent Yott purchased heroin and cocaine from Van for $55. Id. at 31-32.

The next contact between Agent Yott and Van was on October 14, 2005. Agent Yott was again wearing a recording device and went to the Lillibridge house. Id. at 39-40. During this

meeting Agent Yott observed a firearm on Van's waistband. Agent Yott identified the firearm as the same one that was on the coffee table the day before on October 13, 2005. Van told Agent Yott it was a .38 caliber but joked that he should not worry about the gun. Id. at 24-25, 42-43. Agent Yott then purchased two packets of heroin from Van for $100. Id. at 42.

The third encounter between Agent Yott and Van occurred on October 18, 2005 when Agent Yott again called Van to purchase heroin. This time, Agent Yott and Van met at a party store parking lot. When Agent Yott walked over Van's vehicle to purchase the heroin he observed the handle and hammer of the gun on Van's waistband. Agent Yott observed this to be the same gun as the first two drug purchases. Id. at 50-51.

At this point in the ATF investigation, Andre Van was only known as "Dre." R. 38 Trial Tr. at 12-13, 22. Immediately following the October 18, 2005 transaction, Agent Yott requested the ATF team stop Van's vehicle and obtain identification. Id. Agents Bruce Gentry and Steve Hassler surveyed Van as he left the party store parking lot. Id. Van drove to a park and sat in his vehicle for twenty to thirty minutes. Id. at 83. As Van left the park, Agents Gentry and Hassler pulled Van over. Id. During the stop, Agent Hassler approached the driver's side of the vehicle and spoke with the occupant (Van). Def.'s Ex. B. Van was unable to provide Agent Hassler with his driver's license or paperwork for the vehicle. Van incorrectly stated his name was Andre Victor and that he lived at 4150 Dickerson. Id. Agent Gentry observed a brown leather holster in the rear bed of Van's truck. Def.'s Ex. B; R. 38 Trial Tr. at 83. The police report from the October 18, 2005 traffic stop indicates that no search was conducted and no gun or drugs were found. Def.'s Ex. B; R. 38 Trial Tr. at 85. In addition to the written police report, Agent Gentry testified at trial that neither he nor Agent Hessler searched Van or his vehicle during the traffic

stop because the sole purpose of the stop was to obtain Van's identification. Moreover, they did not see any drugs or a gun in plain view. R. 38 Trial Tr. at 85.

The final encounter between Van and Agent Yott occurred the next day on October 19, 2005. Again, Agent Yott placed a call to Van to set up a heroin purchase. Van directed Agent Yott to come to 4654 Lillibridge, Van's sister's house. R. 37: Trial Tr. 1B at 56. When Agent Yott pulled up, Van got into the front passenger seat of Agent Yott's vehicle. Id. at 58. Again, Agent Yott saw that Van had the same gun on his waistband that he had observed in their previous encounters. R. 37: Trial Tr. 1B at 58. R. 38: Trial Tr. at 24-25. This transaction was also recorded and Van gave Agent Yott three packets of heroin and a fourth packet as a "bonus" for $60. R. 37: Trial Tr. 1B at 58.

On October 26, 2005, Detroit Police Department Officers Amos and Estrada pulled Van over for failing to stop at a red light. R. 38: Trial Tr. at 35. While the officers were driving behind Van with their lights activated, they noticed Van move as if he were placing something at his feet or underneath the car seat. Id. at 37, 55-56. Once Van pulled over, they ordered Van out of the car. Officer Amos noticed the holster on Van's waistband. Id. at 39. The officers questioned Van about the holster and he stated that he wore it for show. Id. Then, Officer Amos looked through the driver's side car door and saw a blue steel, snub-nosed revolver on the driver's seat. Id. The officers determined that Van did not have the appropriate concealed weapons permit and was arrested for illegal possession of the firearm. Id. at 40.

Detroit Police Department Sergeant Childs interviewed Van following his arrest. In this interview, Van initially told Sergeant Childs his name was Andre Victor. Id. at 65. He then admitted orally and in writing that he had a gun in his car and the firearm was a ".38 black and

brown." Id. at 71.  Van stated he was shot two weeks before and was using the gun for protection.  However, Van stated he had forgotten that his nephew had the pistol in his vehicle. Id.

Agent Lotoczky obtained the firearm that was seized on October 26, 2005 and identified it as the same one he saw during his four interactions with Van. Id. at 16.  On November 14, 2005, Agent Lotoczky conducted a video interview of Van in which Van waived his rights.  Id. at 94, 101.  Van then admitted that he sold drugs out of 5103 Lillibridge and that he had been carrying a .38 caliber pistol for his protection and that he would wear it on his waistband.  Id. at 101. However, when Van was initially arrested by the Detroit Police Department, he admitted he was coming from a heroin sale but denied owning the gun in his possession. Id. at 103.  At the conclusion of the interview, Agent Lotoczky presented Van with a written document of his statements but Van refused to initial all but the first few sentences.  Id. at 104.

At trial, the parties agreed that the drugs purchased by Agent Yott from Van were heroin and cocaine base in the amounts specified.  Furthermore, the parties agreed that Van had a prior felony conviction. Id. at 118-19.

During trial, Van testified in his own defense. He admitted that on October 18 and 19, 2005 he sold drugs to Agent Yott.  Van admitted he was introduced to Agent Yott on October 13, 2005 by his friend, Turk.  Id.  at 128. Van also testified that there was a pistol on the table during the transactions. Id.  Regarding the gun found under the seat of Van's vehicle during the October 26, 2005 traffic stop, he denied knowing the gun was in the car and denied stating that he used the firearm for protection. Id. at 131, 148.

Agent Lotoczky testified as a witness for the government.  He reviewed the videotaped

interview from November 14, 2005 and confirmed that Van admitted to selling crack out of the Lillibridge house and that he carried the .38 pistol on his waistband. Id. at 157-58.

During the jury trial, counsel conducted an in-depth cross-examination of both Agent Yott and Agent Gentry. The case was considered by the jury and resulted in a guilty charge of every count listed in the indictment. On appeal, the Sixth Circuit affirmed Van's jury conviction and sentence.

## LAW AND ANALYSIS

### I. Downward Departure

Van contends that the court should have considered a downward departure from the Sentencing Guidelines. According to Dupont v. United States, 76 F.3d 108, 110 (6th Cir. 1996), a 28 U.S.C. § 2255 motion cannot be used to re-litigate an issue that was raised on direct appeal absent highly exceptional circumstances. Van previously argued on appeal that the district court erred in treating the Guidelines as mandatory as opposed to advisory. On appeal, the Sixth Circuit held, "the record does not indicate that the district court misunderstood its sentencing authority when addressing his [Van's] request for a variance based on his criminal history" and affirmed Van's conviction and sentence. United States v. Van, 427 Fed. Appx. 423 (6th Cir. 2011), cert. denied, 132 S. Ct. 1123 (2012). There is no evidence of any exceptional circumstances in the present case that would warrant a departure from the standard rule. Consequently, Van's claim must be dismissed.

## II. Ineffective Assistance of Counsel

Van alleges that his trial and appellate counsel were ineffective because they failed to obtain dispatch records from the October 18, 2005 traffic stop. The government represents that there are no such records. To demonstrate ineffective assistance of counsel, Van must show: (1) his counsel's performance was seriously deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

First, to show that counsel's performance was deficient, Van must demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688. In applying this standard, "a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Assistance may still be effective even if counsel chooses not to pursue all possible lines of defense. Strickland, 466 U.S. at 681 (citing Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir. 1979)). Second, in order to establish prejudice, a defendant must show that, but for counsel's error, the result would have been different. Weinberger v. United States, 268 F.3d 346, 352 (6th Cir. 2001).

In the instant case, counsel's choice not to pursue the dispatch records (when none are found to exist) represents a reasonable strategic decision during trial and appeal. According to Strickland, counsel is afforded this right to exercise professional judgment. Additionally, the rigorous cross-examination of both Agent Gentry and Agent Yott at trial indicates counsel was not unprepared or unreasonable under professional norms. Accordingly, counsel's failure to obtain the dispatch records does not indicate that representation fell below an objective standard of reasonableness under prevailing professional norms.

The next issue is whether or not the trial result would have been different if dispatch records existed and had been presented showing that Agents Gentry and Hessler searched Van and his vehicle.  To begin, the written police report does not indicate the existence of dispatch records or that there was any dispatch exchange.  Def.'s Ex. B.  Moreover, there is no evidence that the production of dispatch records would have produced a different result at trial. There is an abundance of evidence indicating that Van sold drugs during various transactions with Agent Yott and had a gun during the exchanges.  First, Agent Yott's audio recordings captured the drug sale and Van's acknowledgment that he was carrying a firearm. R.37 Trial Tr. 1B at 31-32, 39, 40, 42-43, 45-46, 58. Second, Van admitted to Sergeant Childs after his arrest on October 26, 2005, that he had a gun in his car for protection and described the gun as a ".38 black and brown."  R. 38 Trial Tr. at 70-71.  Third, after waiving his rights, Van confessed during a videotaped interview with Agent Lotoczky to selling narcotics to police and that he had been carrying a .38 caliber pistol for his protection.  Id. at 94, 101, 103.  Agent Lotoczky confirmed this information during trial testimony.  Id. at 157-58.  Fourth, Van admitted at trial, under oath, that he sold heroin to Agent Yott on October 18, 2005.  Id. at 125-126.  And lastly, Agent Yott testified at trial that Van sold drugs to him and that Van was armed during the drug deal. Id. at 45-46, 50-51, 85.  Therefore, Van's arguments do not support any reason why the jury would reconsider its conviction if dispatch records indicated that during the October 18, 2005 traffic stop, Agent Hassler and Agent Gentry searched Van or his vehicle.

The government argues, persuasively, that under the circumstances the police report and trial testimony of both Agent Yott and Agent Gentry are more credible than Van's accusations. The court agrees and finds that Van has not carried his burden of demonstrating that his

counsel's performance was seriously deficient.  Specifically, the court finds that neither Van's trial and appellate counsel failed to maintain the standard of effective counsel by failing to obtain the dispatch records from the October 18, 2005 traffic stop.  Furthermore, even assuming counsel did provide ineffective assistance, petitioner has not suffered prejudice sufficient to warrant setting aside his sentence. Accordingly, Van cannot sustain his ineffective assistance of counsel claim.

### III. Failure to Produce Dispatch Records

Van also claims that the government withheld the dispatch records related to the October 18, 2005 stop, which violates the Sixth Amendment.  Again, the government represents that there are no dispatch records associated with this case.  Van does not provide evidence that such records existed and were withheld.

Van also claims that the government engaged in prosecutorial misconduct. Van alleges that the government fabricated evidence that was used during trial.  In order to prove prosecutorial misconduct, Van must prove the following elements: (1) existence of false statements; (2) the false statements were material; and (3) the prosecutor knew these statements were false. United States v. Farley, 2 F.3d 645 (6th Cir. 1993).

Applying the Farley test, Van has failed to prove that any prosecutorial misconduct occurred. Van has not provided any evidence that demonstrates the government knew or should have known of any false statements made during trial testimony.  As previously stated, no dispatch records exist related to the October 18, 2005 traffic stop and therefore, there is no indication that the government withheld these documents or knew that the trial testimony was

false in relation to the existence of such documents. Accordingly, Van's claim is without merit.

## **ORDER**

IT IS HEREBY ORDERED that Petitioner's motion to vacate sentence pursuant to 28 U.S.C. § 2255 is DENIED.

s/John Corbett O'Meara  
United States District Judge

Date: February 20, 2013

    I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 20, 2013, using the ECF system and/or ordinary mail.

s/William Barkholz  
Case Manager